## UNITED STATES v. NEW ENGLAND FOIL CORP.

**No. 5856.**—Invoices dated Kirchberg, Berne, Switzerland, December 20, 1938 etc.
Certified December 23, 1938, etc.
Entered at New York, N. Y., January 4, 1939, etc.
Entry No. 781405, etc.

### Third Division, Appellate Term

(Decided April 21, 1943)

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellant.
*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the appellee.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: In these appeals for review of reappraisement the Assistant Attorney General alleges that the trial court erred in manner following: first, in failing to determine a value for the merchandise that could be used by the collector in liquidating the entries; second, in finding an export value for the merchandise when no statutory export value was shown to exist; and third, in finding an export value upon evidence that the goods were freely offered and sold in a foreign country on the basis of a delivered duty-paid c. i. f. price in the United States.

Inasmuch as it is conceded by both sides that the appraiser erred in finding a foreign value for the merchandise and that there was no United States value therefor, the Government contends that evidence should have been introduced to establish the statutory cost of production and that the judgment below should be reversed and the cause remanded to the trial court with instructions to restore the cases to the trial calendar for evidence of cost of production.

It is further alternatively contended that should this division find that an export value exists for the merchandise, that the amount thereof should be returned at $6.50 per ream of 260,000 square inches, less 2 per centum discount, without allowances for nondutiable charges and duty.

The merchandise at issue in these appeals consists of certain items of aluminum foil marked A and B and initialed F. C. G. upon the various invoices. Appraisal was made at the foreign value in Swiss Francs. It is conceded there is no foreign or United States value for the merchandise. The testimony is not controverted and fully establishes that the foil is used by converters only and the importer; a converter, acts as agent for the foreign manufacturer in obtaining and transmitting orders to the manufacturer for acceptance and attends to the entry requirements and acts as a collection agency for the manufacturer. All merchandise is shipped to the importer herein who enters it and forwards it to the ultimate purchaser. The importer has neither an exclusive contract with the manufacturer nor any written agreement of exclusive agency, and merely acts as a collector of funds which are fully transmitted to the manufacturer after payments of the c. i. f. and duty charges have been made. In payment for the services rendered the importer receives a sum equal to 1 per centum of the various transactions as a commission. The commission is not in dispute. The trial court in rendering a decision detailed the testimony and documentary evidence at length (see Reap. Dec. 5310, and also decision on rehearing, Reap. Dec. 5591) and we feel it unnecessary to reiterate the same here.

The court below found that during the months of January, February, March, and April, 1939, the periods of exportation of the merchandise, that aluminum foil of .00035-inch gauge, represented by items marked A or B and initialed F. C. G. on the invoices accompanying the entries herein, had no foreign value, and that at such periods of exportation an export value existed and that such value was the duty paid c. i. f. New York price of $6.50 per ream of 260,000 square inches, less 2 per centum cash discount; and that such price was subject to deductions for freight, insurance, and consular fee, as those amounts are shown on the invoices, and "less the duty included in the foregoing net result at the applicable rate or rates."

We have carefully considered the evidence and briefs of counsel in this case and are unable to find any error in the decision and judgment of the court below. The sales here in question were consummated in Switzerland and not in the United States, the manufacturer retaining the authority to sell direct and the freely offered price to all purchasers for export to the United States is $6.50 per ream,.less the cash discount, including the duty and nondutiable charges indicated. Such value, with such deductions, is clearly the export value as defined by the statute. See *Gerlach* v. *United States*, Reap. Dec. 5084 affirmed in Reap. Dec. 5443. Under the novel theory advanced by the Government, c. i. f. duty-paid prices are excluded from any definitions of value as outlined by Congress in the administrative provisions of the law. It may hardly be implied that Congress in

drafting the tariff laws was so ignorant of the ordinary commercial transactions that c. i. f. duty-paid transactions are so outside its knowledge that such prices were not contemplated when drafting the definitions of value.

In the appraisement of merchandise the appraising officers determine the value of merchandise per unit of quantity and they usually indicate which subsection of section 402 is used as the basis of value. When the value so returned includes nondutiable charges, that fact also is indicated upon the invoices by a deduction of such nondutiable items appearing thereon and a report of all such findings are forwarded to the collector. In case the duty applicable to the merchandise is in any way regulated by the value of the imported article, the collector's province in determining the correct rate of duty, according to the value, is not an appraisement, even though the duty may be included in the unit value because the final appraised value per unit as returned by the appraising officer, when the duty is regulated by the value, is indicative of the proper rate to be deducted. As in the importations before us, where the weight of the merchandise is involved in determining the amount of the included duty, it is the duty of the appraiser to indicate the correct weight to be taken as he has done in the cases here before us. For example, the second invoice in entry 781405, Reappraisement 129722–A, covers five cases, numbered 81077/81, containing a total of 27,200,000 square inches of foil. The invoiced price is $6.50 per ream of 260,000 square inches, and the total invoiced value is $680.00 including nondutiable charges for insurance, freight, and consular certificate, totaling $15.68. The result including the duty is therefore $664.32. At 20 per centum ad valorem the net purchase price would be $553.60, and the duty, $110.72. The total net weight of the foil is given upon the invoice as 1,047.7 pounds, and checked as correct by the appraiser. At 11 cents per pound the duty would amount to $115.25. Inasmuch as the duty applicable to this merchandise is 11 cents per pound but not less than 20 per centum ad valorem nor more than 40 per centum ad valorem, a duty of 11 cents per pound would be applicable to the merchandise. Therefore the duty to be deducted from $664.32 would be $115.25, and thus the net value for dutiable purposes would be $549.07. Any such calculation that the collector is required to undertake clearly could not be considered as an appraisement of the merchandise. Upon invoices covering various merchandise, the collector is required to prorate the charges as he has done in millions of invoices heretofore.

Section 501 of the Tariff Act of 1930 directs the single judge, sitting in reappraisement, to find a value for the merchandise. This the court below has done. For the reasons stated, the judgment of the court below is *affirmed*. Let judgment be entered accordingly.