**UNITED STATES**

**v.**

**JOSEF MFG., LTD.**

**A.R.D. 274; Reappraisements R67/5062, R67/5063.**

United States Customs Court, Third Division, Appellate Term.

June 23, 1970.

William D. Ruckelshaus, Asst. Atty. Gen. (Harold L. Grossman, New York City, trial attorney), for appellant.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for appellee.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges.

LANDIS, Judge:

This is an application to review the decision of the trial judge in Josef Mfg., Ltd. v. United States, 62 Cust.Ct. 763, R. D. 11616, 294 F.Supp. 956 (1969), as to the export value of rayon dresses manufactured by Josef Mfg., Ltd., Montreal, Canada.

The dresses came down the highway from Canada in two shipments on or about January 18 and 25, 1967. At Champlain, New York, A. N. Deringer, customhouse broker, and Josef Mfg., Ltd., entered the dresses for the account of purchasers in Chicago (R67,/5062) and Palm Beach (R67,/5063). Both those firms noted and declared, in the form provided therefor on the customs entry (Customs Form 7501), that they were only nominal consignees entering the dresses for the account of purchasers from Josef Mfg., Ltd.

The commercial invoice of Josef Mfg., Ltd., filed in connection with each entry, indicates that the purchasers in Chicago and Palm Beach paid the same price for identically numbered styled dresses, prices stated to include "all charges to * * * [Chicago and Palm Beach], including custom's duty, brokerage and transportation." The record attests, that Josef Mfg., Ltd., in fact freely sold identical dresses, at the same delivered price, to all purchasers anywhere in the United States. We need not here go into the commercial signification to the seller and all purchasers, anywhere in the United States, of one delivered price. One may gain or one may lose depending on cost-price factors not here disclosed, and whether the place of delivery is Los Angeles or New York.

At issue in this review is the legal signification of the appraiser's action valuing the dresses on the basis of their export value, at the delivered invoice prices anywhere in the United States, less an arbitrary sum, in the amount of $7.88 to cover the cost of freight from Montreal to a point in New York, less additional amounts for entry fees and duty. Export value, concededly the cor-

rect basis for valuing the imported dresses, is defined in section 402(b) of the Tariff Act of 1930, as amended (70 Stat. 943, T.D. 54165), as follows:

> (b) *Export value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

■ The purpose of the above definition, as applied to these imported dresses, is to value them at the price at which they were freely sold to all purchasers or, in the absence of sales, offered for sale to all purchasers. Such valuation must be consistent with the facts and reflect export value as judicially construed. It cannot be arbitrary. Aceto Chemical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846 (1964). The fact around which this dispute swirls is that these imported dresses were freely sold to all purchasers at the same delivered price, including, for one, transportation costs from Montreal to any place in the United States. Diametrically opposed to that fact is the law, alluded to in the opinion below, citing cases, that "ocean freight [here it is highway freight from Montreal to place of delivery] is not a part of export value." The appraiser sought to bring the facts and law together, and thus serve the statutory purpose of a *single selling price* to all purchasers, by allowing an arbitrary sum, in the same fixed amount, for freight from Montreal to New York, rather than the actual cost of freight from Montreal to Chicago and

Palm Beach, respectively, as the case law requires.

The trial judge concluded, as a matter of law, that export value could not be determined by deducting an arbitrary amount for freight; that a delivered price was not *per se* an export value under the statute; that the delivered price to all purchasers, with varying legal deductions for freight depending on the place of delivery, did not serve the purposes of the statute to establish one price at which the dresses were freely sold; and that, therefore, in the absence of such price, the export value was the price at which the imported dresses were *freely offered* to all purchasers in the United States, f.o.b. Montreal.

Appellant makes substantially the same legal contentions as it did below: First, that the c.i.f. duty paid delivered price represented export value as defined by statute and, second, that the appraised value with the arbitrary deductions for freight from Montreal to New York was the correct export value. Appellant's application for review alleges that the trial judge erred when he concluded that neither of those contentions could be sustained as a matter of law.

■■ The cases cited and discussed by the trial judge in his opinion decision, point up that whenever appellant has pressed this court to find an export value from a c.i.f. delivered price to all purchasers in the United States, without deductions, as it has time and time again, and does here again, the arguments have been rejected. United States v. The Heyman Co., Inc., 50 Cust.Ct. 564, A.R.D. 157 (1963); Plywood & Door Manufacturers Corporation v. United States, 44 Cust.Ct. 541, Reap. Dec. 9581 (1960), modified and remanded, United States v. Plywood & Door Manufacturers Corporation, 46 Cust.Ct. 797, A.R.D. 133 (1961), decided on remand, Plywood & Door · Manufacturers Corporation v. United States, 48 Cust.Ct. 526, Reap.Dec. 10151 (1962); United States v. New England Foil Corp., 10 Cust.Ct. 596, Reap.Dec. 5856 (1943); The A. W. Fenton Co., Inc. v. United

States, 61 Cust.Ct. 437, R.D. 11556, application for review abandoned, 61 Cust. Ct. 613, A.R.D. 246 (1968). Since the decisions of this court support the conclusions of the trial judge, we are not persuaded to take a different view on old contentions which appellant should have long past heretofore tested on appeal. Valuation, as we have already stated, cannot be arbitrary, Aceto Chemical Co., Inc. v. United States, *supra,* and arbitrary deductions for freight from Montreal to New York, in lieu of freight charges to Chicago and Palm Beach, fit nowhere in the scheme of statutory value.

In its brief, appellant forsook arguing the evidence. Here it argues that there is no probative evidence that the dresses were freely offered to all purchasers at the f.o.b. Montreal prices found by the trial judge. Mr. Harold Josephson, general manager of Josef Mfg., Ltd., testified that all Josef's agents in the United States were instructed to advise all customers that the could buy the dresses at the delivered prices or the price f.o.b. Montreal. Both sets of prices are listed in the manufacturer's price list, exhibit 1. Appellant does not doubt the truth of what Mr. Josephson testified to, but argues that it does not go far enough because there is no proof the instructions were followed. Whether the instructions were followed we will never know. The true question as to those instructions, however, is not whether it is possible that they were not followed, but whether there is sufficient probability that the instructions were followed. The market being the competitive place it is, we believe it more probable than not, that the instructions were followed. The record, furthermore, gives us no reason to think the instructions were not followed.

We adopt and incorporate by reference the substance of the findings and conclusions of the trial judge below.

The judgment below is affirmed. Let it so enter.